UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MELISSA B. JUDELSOHN,

                            Plaintiff,

    v.                                                                         **DECISION AND ORDER**
                                                                                               11-CV-388S

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

                                  Defendant.


       1.       Plaintiff Melissa B. Judelsohn challenges an Administrative Law Judge's ("ALJ") determination that she is not disabled within the meaning of the Social Security Act ("the Act"). Plaintiff alleges that she has been disabled due to bipolar and anxiety disorders, and fibromyalgia since September 1, 2006. Plaintiff contends that her impairments render her unable to work. She therefore asserts that she is entitled to supplemental security income ("SSI") and disability insurance benefits ("DIB") under the Act.

       2.       Plaintiff filed Title II and Title XVI applications on September 20, 2007, alleging disability beginning September 1, 2006. The Commissioner of Social Security ("Commissioner") denied Plaintiff's initial applications. Plaintiff then requested a hearing. An administrative hearing was held on March 10, 2010 before ALJ Timothy M. McGuan, at which Plaintiff appeared and testified. The ALJ considered the case *de novo*, and on March 25, 2010, issued a decision denying Plaintiff's applications for benefits. Plaintiff filed a request for review with the Appeals Council, which, on April 15, 2011, denied Plaintiff's request for review. Plaintiff filed the current civil action on May 5, 2011, challenging

Defendant's final decision.[1]

3. On October 10, 2011 Plaintiff filed a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. The Commissioner followed suit the following day. Briefing on the motions concluded November 7, 2011, at which time this Court took the motions under advisement without oral argument. For the reasons set forth below, the Commissioner's motion is granted and Plaintiff's motion is denied.

4. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5. "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen,

---

[1] The ALJ's March 25, 2010 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 404.1520, 416.920. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

7. This five-step process is detailed below:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v.

Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

8.  Although the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step of this inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9.  In this case, the ALJ made the following findings with regard to the five-step process set forth above: (1) Plaintiff has not engaged in substantial gainful activity since September 1, 2006 (R. at 13);[2] (2) Plaintiff's affective and anxiety disorders are "severe" impairments within the meaning of the regulations (id.); (3) Plaintiff does not have an impairment or combination of impairments that meets or medically equals the criteria necessary for finding a disabling impairment under the regulations (R. at 14.); (4) Plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but could only occasionally interact with the public and only occasionally understand, remember, and carry out complex and detailed instructions (id.); and (5) the Plaintiff retained the ability to perform past relevant work as a newspaper deliverer (R. at 16). Ultimately, the ALJ concluded that Plaintiff was not under a disability as defined by the Act from September 1, 2006, through March 25, 2010, the date of the ALJ's decision.

---

[2]Citations to the underlying administrative record are designated as "R."

(R. at 18.)

10. Plaintiff advances six challenges to the ALJ's decision. First, Plaintiff argues that the ALJ erred in not recontacting her treating physician. Second, Plaintiff argues that the ALJ did not properly assess her treating physician's opinion pursuant to SSR 96-2p. Third, Plaintiff should be considered disabled based on her inability to perform sustained work activities. Fourth, the ALJ's RFC assessment improperly evaluated the severity of Plaintiff's mental impairments. Fifth, Plaintiff contends that the ALJ erred in not addressing statements made by the disability examiner and her case manager. And, sixth, the ALJ's questions to the vocational expert ("VE") did not reflect all of Plaintiff's limitations.

11. Plaintiff's first challenge is that the ALJ erred in not, *sua sponte*, recontacting her treating physician, Dr. Gregory P. Schenk. Plaintiff points out that Dr. Schenk found her unable to work on several occasions for extended periods of time. (R. at 202, 275, 276, 279, 416.) On this basis, Claimant asserts, the ALJ was required to recontact the treating physician for further information on why he found her unable to work.

12. An ALJ has an obligation to develop the administrative record, including, in certain circumstances, recontacting a source of a claimant's medical evidence, *sua sponte*, to obtain additional information. Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998) (citing Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996)). The duty to recontact arises only where an ALJ lacks sufficient evidence to evaluate opinion evidence or make a disability determination. Ayers v. Astrue, No. 08-CV-69A, 2009 WL 4571840 (W.D.N.Y. Dec. 7, 2009) (citing Rebull v. Massanari, 240 F. Supp. 2d 265, 272 (S.D.N.Y. 2002) ("The fact that the record does not support the treating physician's opinion does not mean that there are administrative gaps in the record triggering a duty to recontact")); see also 20 C.F.R. §

404.1512(e) ("When the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled, we will need additional information to reach a determination or a decision"); 20 C.F.R. § 404.1527(c)(3) ("If the evidence is consistent but we do not have sufficient evidence to decide whether you are disabled, or if after weighing the evidence we decide we cannot reach a conclusion about whether you are disabled, we will try to obtain additional evidence . . . .").

13. Whether the ALJ had sufficient evidence from which to determine Plaintiff's disability, such that there was a duty to recontact Dr. Schenk, is the basis of her second argument. Because, as discussed below, this Court finds that the ALJ did have adequate evidence from which to render a disability determination, there was no duty to recontact Dr. Schenk for clarification of his opinion, and Plaintiff's first challenge is rejected.

14. Plaintiff's second challenge is that the ALJ did not comply with SSR 96-2p in evaluating the opinion of her treating physician, Dr. Schenk. Plaintiff argues that the ALJ failed to specify what weight he was giving Dr. Schenk's opinion. Further, it is asserted that the ALJ erred in not giving Dr. Schenk's opinion controlling weight. Plaintiff concludes by arguing that the ALJ's errors mean his decision was unsupported by medical evidence and is consequently nothing more than an improper medical determination by a lay person.

15. The final determination of disability is an issue reserved for the Commissioner. 20 C.F.R. § 404.1527(d); see also Green-Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003) ("'A treating physician's statement that the claimant is disabled cannot itself be determinative'") (quoting Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999)). Although "[r]eserving the ultimate issue of disability to the Commissioner relieves the Social Security Administration of having to credit a doctor's finding of disability, [] it does not

exempt administrative decisionmakers from their obligation, under Schaal and [the regulations] to explain why a treating physician's opinions are not being credited." Snell, 177 F.3d at 134; Newbury v. Astrue, 321 Fed. App'x. 16, 17 (2d Cir. 2009) (summary order) (statement by doctor that individual is disabled does not constitute disability determination but still requires that ALJ "comprehensively set forth [the] reasons for the weight assigned to a treating physician's opinion").

16.   Contrary to Plaintiff's contentions, the ALJ provided sufficient indication of the weight given her treating physician's opinion. The ALJ repeatedly observed that Dr. Schenk's diagnosis provided no grounds, medical or otherwise, to support his diagnosis. The ALJ also observed that Dr. Schenk was not a mental health professional, and that no objective evidence was cited in support of the doctor's diagnosis. There is thus no question that the ALJ gave little to no weight to Dr. Schenk's opinion.

17.   Turning to Plaintiff's substantive argument, that Dr. Schenk's opinion was entitled to controlling weight, this Court notes that Plaintiff's challenge is premised on what is known as the "treating physician's rule."[3] Under that rule, the ALJ must give controlling weight to a treating physician's opinion when that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(c)(2); see also Green-Younger, 335 F.3d at 106; Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000).

Generally, "the Social Security Administration is required to explain the weight it gives to the opinions of a treating physician." Snell, 177 F.3d at 132. Moreover, SSR 96-2p provides that:

---

[3] "The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No. 03-Civ.0075(RCC)(AJP), 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

7

> [T]he notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.

1996 WL 374188, at *5 (S.S.A. July 2, 1996). Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances. Under 20 C.F.R. § 404.1527(c)(1)-(6), the ALJ should consider the following factors when determining the proper weight to afford the treating physician's opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) supportability of opinion; (4) consistency; (5) specialization of treating physician; and (6) other factors that are brought to the attention of the court. See de Roman, 2003 WL 21511160, at *9; see also Shaw, 221 F.3d at 134; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998).

18. Here, the ALJ was not required to credit Dr. Schenk's conclusory findings that claimant was permanently disabled. See 20 C.F.R. § 404.1527(d). The ALJ was instead permitted to rely, as he did, on the fact that Dr. Schenk was rendering opinions on Claimant's mental health while not, in fact, being a mental health professional. See 20 C.F.R. § 404.1527(c)(5). Although Claimant contends that Dr. Schenk's opinion is bolstered by that of Dr. Julianna Zei, a psychiatrist, with whom he allegedly coordinated his care, this argument is unpersuasive where the physicians' assessments drastically differed.

Dr. Schenk ascribed Claimant a Global Assessment of Functioning ("GAF") score

of 50.[4]  (R. at 289-92.)  A GAF score between 41 and 50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)."  Arrington v. Astrue, No. 09-CV-870 A(F), 2011 WL 3844172, at *3 n. 3 (W.D.N.Y. Aug. 8, 2011) (quoting Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders 32 (4th ed., Text Revision 2000)).  By contrast, less than a month later, Dr. Zei assessed Claimant at a GAF of 70, indicating "some mild symptoms or some difficulty in social, occupational, or school situations, but general functioning and the existence of some meaningful personal relationships."  Petrie, 412 F. App'x at 406 n. 2.

Additionally, the ALJ was entitled to rely on inconsistencies in the treating physician's opinion.  See 20 C.F.R. § 404.1527(c)(4); Micheli v. Astrue, No. 10-CV-6655, 2011 WL 4074624, at *5 (W.D.N.Y. Sept. 13, 2011) (finding ALJ correctly gave less than controlling weight to treating physician where opinion was internally inconsistent).  Dr. Schenk noted on April 2, 2007 that Claimant was "doing much better."  (R. at 207.)  On September 24, 2007 he noted that Claimant had some "mild tangential thought processes" but was "generally on target."  (R. at 226.)  On October 23, 2007, she had some difficulty staying on task but was "reasonably well." (R. at 225.) This positive assessment continued as late as March 2, 2008.  (R. at 262.)  Despite these observations, on January 2, 2008, he restricted her employment for a six-month period.  (R. at 279.)  On March 25, 2008, he confirmed this diagnosis by finding her unable to work for the next two or three months. (R. at 275-76.)

Additionally, some of the reasons included in Dr. Schenk's notes are not medical

---

[4]"GAF is a scale that indicates the clinician's overall opinion of an individual's psychological, social, and occupational functioning."  Petrie v. Astrue, 412 F. App'x 401, 406 n. 2 (2d Cir. 2011) (summary order).

at all. For example, Claimant reported having problems working because it was difficult finding someone to watch her child. (R. at 205.) It was also Claimant who repeatedly asserted her own belief that she was unable to work. (R. at 264.) Neither fact warrants a finding of disability.

19.	But even if Dr. Schenk's opinion was not so clearly deficient, the ALJ was not required to give it controlling weight because it was contradicted by other substantial evidence in the record. See 20 C.F.R. § 404.1527(c)(2). As already discussed, one of Claimant's other treating physician's, Dr. Zei, assessed her GAF at 70. (R. at 407.)[5] Dr. Zei also described Claimant's mood swings as "more situational than anything else," and related to whether she would divorce her husband. (R. at 195.)[6] Crying spells Claimant experienced later, in September of 2008, were similarly "mostly situational about her husband." (R. at 412.) A psychiatric note from September 3, 2008, shows "a negligible degree of conceptual disorganization" with "no significant preoccupations" and "good" judgment. (Id.)

20.	Dr. Zei's opinion is supported by that of state agency examiners. Dr. Thomas Ryan performed a consultative psychiatric evaluation of Claimant on December 20, 2007, in which he found no limitations in her ability to follow and understand simple directions and instructions, and only a moderate limitation in her ability to perform complex tasks, make adequate decisions, relate with others, and deal with stress. (R. at 238.) Her cognitive functioning was in the average range, and her insight and judgment appeared only "somewhat poor." (Id.)

---

[5]That assessment also matches that of another psychiatrist, Dr. Sadiq Al-Samarrai. (R. at 287.)

[6]In a progress note dated May 11, 2007, Dr. Zei expressed her belief that "most of the feelings [Claimant's] having right now are because of the stress that she's going through with this whole process, and she's starting to mourn for becoming divorced and that the relationship is not how she thought it would be." (R. at 195.)

Dr. H. Tzetzo similarly found that she had only mild restrictions to daily living activities, and moderate limitations in maintaining social functioning. (R. at 252.) Dr. Tzetzo opined that Claimant "should be able to handle other types of competitive work." (R. at 254.) Further, she could understand and follow directions in a work setting, provided she was not exposed to more than "low public contact." (Id.)

These opinions are reinforced by that of Dr. Kevin Duffy, who conducted another consultative psychological evaluation on August 20, 2008. By that time, Claimant's insight and judgment had improved and were "[f]air to good." The examiner could not be sure whether her psychiatric problems were, in themself, "significant enough to interfere with the claimant's ability to function on a daily basis." (R. at 324-25.)

It is well settled that an ALJ is entitled to rely upon the opinions of the state agency's medical and psychological consultants as qualified experts in the field of Social Security disability. See 20 C.F.R. § 404.1527(e). Contrary to Claimant's assertions, the ALJ was not required to rely on that treating physician's opinion most favorably disposed towards her disability claim. The ALJ properly relied on the opinions of Plaintiff's other treating physician, Dr. Zei, as well as the opinions of the state agency consultants. Plaintiff's challenge that the ALJ erred for not giving Dr. Schenk's opinion sufficient weight is thus without merit, and is rejected.

21. Plaintiff's third challenge is premised on her belief that she could not hold down a job for a significant period of time. She cites to multiple decisions from outside this Circuit for the proposition that a claimant who demonstrates an inability to maintain a job for more than a short period of time is not capable of substantial gainful activity, and is disabled. See, e.g., Gatliff v. Comm'r of Soc. Sec. Admin., 172 F.3d 690, 694 (9th Cir. 1999); Washington v. Shalala, 37 F.3d 1437, 1442 (10th Cir. 1994). Regardless of

whether those cases accurately state the law in this Circuit, Claimant has not shown that she could not stay employed in a single position. As already discussed, substantial evidence supports the ALJ's decision not to credit Dr. Schenk's diagnosis of total disability. Further, the ALJ was also not required to credit Claimant's subjective complaints.

22. In assessing a Claimant's credibility on the intensity and persistence of her impairments, an ALJ will consider factors such as (I) plaintiff's daily activities; (ii) location, duration, frequency, and intensity of pain and symptoms; (iii) precipitating and aggravating factors; (iv) type, dosage, effectiveness and side effects of any medications taken to alleviate the pain and symptoms; (v) treatment other than medication; (vi) any measures used to relieve the pain or other symptoms; and (vii) other factors concerning functional limitations and restrictions due to pain and symptoms. 20 C.F.R. § 404.1529(c)(3). However, "[f]ailure to expressly consider every factor set forth in the regulations is not grounds for remand where the reasons for the ALJ's determination of credibility are 'sufficiently specific to conclude that he considered the entire evidentiary record in arriving at his determination.'" Wischoff v. Astrue, No. 08-CV-6367, 2010 WL 1543849, at *7 (W.D.N.Y. Apr. 16, 2010) (quoting Delk v. Astrue, No. 07-CV-167-JTC, 2009 WL 656319, at *4 (W.D.N.Y. Mar. 11, 2009)).

Here, the ALJ noted disparities between Claimant's alleged symptoms and the medical record. Specifically, Claimant complained of side effects from her medications, but such complaints appear not to have been recorded by any of her treating physicians, and Claimant provides no evidence to the contrary.[7] She also alleged having daily panic attacks. But this frequency is unsupported by her physicians' notes. Finally, the ALJ

---

[7]Although Claimant's memorandum cites extensively from the record, none of these citations specifically address the reasons relied on by the ALJ.

observed that although Claimant stated that she talks continually (so much so that it would prevent her from working), she was able to control herself during the hearing.

The ALJ was entitled to find Claimant not credible on the basis of these observations. Accordingly, although Claimant has identified a number of places in the record where she is described as "excessively manic" (R. at 128-29) and "not stable" (R. at 156-61) there is substantial evidence in the record to support the ALJ's decision that Claimant did not lack the ability to maintain steady employment for more than a short period of time. Her third challenge is rejected.

23. Claimant's fourth challenge is that the ALJ's RFC assessment was in error. Claimant maintains that the ALJ's decision did not sufficiently reflect the severity of her mental impairments. "The Commissioner defines RFC as a claimant's 'maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis . . . 8 hours a day, for 5 days a week, or [on] an equivalent work schedule.'" Sorensen v. Comm'r of Soc. Sec., No. 3:06 Civ. 554, 2010 WL 60321, at *8 (N.D.N.Y. Jan. 7, 2010) (quoting SSR 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996)). In assessing a Claimant's RFC, the ALJ "must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." SSR 96-8p, 1996 WL 374184, at *1. "The ALJ must specify which functions the claimant is able to perform and may not "simply mak[e] conclusory statements regarding [the claimant's] capacities." Sorensen, 2010 WL 60321, at *8 (citing LaPorta v. Bowen, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)). The ALJ must also consider all the relevant evidence in the record, "including the claimant's physical abilities, mental abilities, and symptoms, pain, and other limitations which could interfere with work activities on a regular and continuing basis." Id. (citing 20 C.F.R. § 404.1545). Then, after

assessing the plaintiff's functional limitations and abilities, the ALJ categorizes the RFC into exertional levels of work, e.g., "sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 1996 WL 374184, at *1.

24. Here, the ALJ determined that Plaintiff was capable of performing a full range of work at all exertional levels. (R. at 14.) The only limitations on Claimant's ability to work were non-exertional and included only occasional interactions with the public, and only occasionally understanding, remembering, and carrying out complex and detailed instructions. (Id.) This assessment comports with those of Dr. Ryan and Dr. Tzetzo. Dr. Ryan found only a moderate limitation in Claimant's ability to perform complex tasks, make adequate decisions, relate with others, and deal with stress. (R. at 238.) Dr. Tzetzo found that she could understand and follow directions in a work setting, but that she should only have minimal public contact. (R. at 254.) These findings directly contract Claimant's assertion that there was no medical evidence supporting the ALJ's findings.

Instead, it is Claimant's assertion that she could not understand, carry out, and remember even simple instructions that is unsupported. Claimant again relies on her testimony and that of Dr. Schenk.[8] As this Court has already determined, neither can provide the necessary support. Barring additional evidence, her claim must be rejected.

25. Although Claimant's fifth challenge seeks to identify such evidence, it is ultimately unavailing. Claimant alleges that the ALJ's decision ignored lay evidence in the record. She contends that nowhere in the decision does the ALJ discuss the report by her disability examiner, or her case manager's third-party function report.[9]

---

[8]Rather than cite to specific parts of her testimony, Claimant gamely cites to 24 pages of her 41 page hearing transcript.

[9]Claimant also points to the ALJ's failure to discuss statements by her former husband, mother, and daughter. (Pl.'s Mem. 15, Docket No. 4-1.) Claimant provides no citations to these statements nor discusses what statements those individuals made, or how they help her case.

26. "In evaluating a claim for disability, an ALJ generally must consider any testimony concerning the claimant's physical ailments and resulting RFC offered by lay witnesses during the administrative hearing." McArthur v. Comm'r of Soc. Sec., No. 3:06 Civ. 860, 2008 WL 4866049, at *10 (N.D.N.Y. Nov. 7, 2008). Similarly, the ALJ must consider "any observations about the individual recorded by [SSA] employees during interviews, whether in person or by telephone." SSR 96-7p, 1996 WL 374186, at *5 (S.S.A. July 2, 1996).

An ALJ's determination that a "[lay] witness is not credible must . . . be set forth with sufficient specificity to permit intelligible plenary review of the record." Williams on Behalf of Williams, 859 F.2d at 260-61. The ALJ's failure to discuss such evidence can rise to the level of plain error where the lay testimony is consistent with the record evidence. McArthur, 2008 WL 4866049, at *10. But the error is harmless where "application of the correct legal principles to the record could lead to only one conclusion." Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987).

Recently, in Thibault v. Astrue, No. 5:10-cv-188, 2011 WL 5024460, at *6 (D. Vt. Oct. 20, 2011) the court remanded, in part for failure to consider the probative value of a lay witness's testimony. In so doing, the ALJ also noted, however, that "an ALJ's failure to even mention lay witness testimony . . . may constitute harmless error in circumstances not present here." Id. at *6 n. 7; see also McKinstry v. Astrue, No. 05-10-cv-319, 2012 WL 619112, at *6 (D. Vt. Feb. 23, 2012) (finding harmless error where opinion letter not considered by ALJ provided little information, did not discuss limitations during relevant period, was inconsistent with other evidence, and was otherwise not more favorable to claimant).

27. Upon review of the relevant evidence, this Court finds the ALJ's error

15

harmless. Addressing first the disability examiner, S. Patrick's, observations, the examiner did describe Claimant as "excessively manic," "unfocused," and "overwhelmed." (R. at 129.) Indeed, the last 20 minutes of the interview were rushed because Claimant's "constant motion and talking" started to irritate others in the vicinity. (Id.) But these observations were not statements of Claimant's condition, but only how she appeared during the interview. See McKinstry, 2012 WL 619112, at *6 (noting that unconsidered opinion letter set forth claimant's limitations in the present tense). The observations must also be understood in context. Although Claimant acted in a manic fashion and the interview had to conclude early, the situation was exacerbated by her baby's crying and fussing, leading Claimant to, at one point, slap it across the mouth. (R. at 129.) Claimant also "seemed almost proud of the fact that she has bi-polar disorder." (Id.) Further, and contrary to the Claimant's own hearing testimony, the examiner did not observe any problems with her understanding, sitting, or standing. (Id.)

Turning to statements made by her case manager, Sheri Ensel, in a third-party function report, Ms. Ensel described Claimant as "not a very stable person" who did not do very much. (R. at 156.) Ms. Ensel also noted that Claimant had trouble sleeping and, at times, would act "off the wall and not rational." (R. at 159.)

But other comments by Ms. Ensel contradict Claimant's hearing testimony and support the ALJ's RFC assessment. For example, Ms. Ensel thought Claimant was "good with handling money." (R. at 158) But at the hearing Claimant stated that she frequently had checks bounce and had problems paying bills on time. (R. at 47.) Ms. Ensel also stated that Claimant would "cook from scratch." (R. at 157.) At the hearing, Claimant maintained that she did not prepare meals or use the stove, and only cooked by way of microwave. (R. at 31, 48-49.) Similarly, Claimant stated that she had trouble doing

chores, including taking care of recyclables and doing laundry. (R. at 31, 53.) Ms. Ensel believed Claimant could complete household chores "well" and that the "house is very clean." (R. at 157.) Ms. Ensel also thought Claimant could follow written instructions and finish what she started, and would only need some direction in doing something she had not done before. (R. at 159.) Ms. Elsel also believed that Claimant was, for the most part, "okay around people." (Id.)

28.    Because the lay witness testimony contradicts much of what claimant said during her hearing, she is hard-pressed to now argue that consideration of these statements would have altered the ALJ's decision. But even ignoring this fact, the ALJ's failure to discuss these remarks does not warrant remand because, to the extent they could be interpreted as supporting claimant's position, they were inconsistent with the medical evidence in the record. See Dziewa v. Astrue, No. 08-CV-817S, 2010 WL 811891, at *5 (W.D.N.Y. Mar. 1, 2010) (failure to discuss lay witness testimony not plain error where inconsistent with medical evidence); Backus v. Astrue, No. 3:05-CV-1180 (NAM), 2008 WL 4519006, at *13 (N.D.N.Y. Sept. 29, 2008) ("[A]n ALJ is not required to credit lay witness testimony in the absence of corroborating objective medical evidence"); see also Burden v. Astrue, 588 F. Supp. 2d 269, 278 (D. Conn. 2008) (finding that lay witness's credibility did not need to be assessed where substantially outweighed by evidence in the record).

Inversely, to the extent the lay witness evidence describes Claimant as having difficulties dealing with people, and requiring additional help understanding instructions, these observations are consistent with the limitations described in the ALJ's decision, and Dr. Ryan's and Dr. Tzetzo's medical opinions. Viewed this way, the testimony is not helpful to Claimant, and the ALJ's failure to consider it is without effect. In either case, the testimony was not "critical to the adjudication of [Claimant's] application" and failure to

consider it does not warrant remand. See Burden, 588 F. Supp. 2d at 278-79 (failure to make credibility finding does not undermine ALJ's decision where adequate substantial evidence supports no-disability finding)

Thus, although the ALJ did not explicitly discuss statements made by the lay witnesses, any error resulting from that omission was harmless, and Claimant's fifth challenge is rejected.

29. Claimant's final argument is that remand is necessary because the ALJ's hypothetical question to the VE did not reflect all of her limitations. Claimant points out that the ALJ did not include a moderate and marked limitation with regard to mental requirements, as per Dr. Schenk's diagnosis. Dr. Schenk determined that Claimant suffered from frequent deficiencies in concentration, persistence, or pace, and had marked difficulties in maintaining social functioning. (R. at 289.) He also found Claimant had moderate limitations in understanding, remembering, and carrying out short, simple instructions. (R. at 404.)

30. Having already determined that the ALJ was not required to credit Dr. Schenk's opinion, and that the other medical evidence in the record provided substantial support for the ALJ's conclusions, this Court need not further consider arguments premised on that opinion. Claimant's final challenge is rejected.

31. After carefully examining the administrative record, this Court finds that substantial evidence supports the ALJ's decision in this case, including the objective medical evidence and medical opinions contained therein. This Court is satisfied that the ALJ thoroughly examined the record and afforded appropriate weight to all of the medical evidence in rendering his decision that Plaintiff is not disabled within the meaning of the Act. Finding no reversible error, this Court will grant Defendant's Motion for Judgment on

the Pleadings and deny Plaintiff's motion seeking similar relief.

\* \* \*

IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings (Docket No. 5) is GRANTED.

FURTHER, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 4) is DENIED.

FURTHER, that the Clerk of the Court shall close this case.

SO ORDERED.

Dated: June 25, 2012
      Buffalo, New York

                                      <u>/s/William M. Skretny</u>
                                      WILLIAM M. SKRETNY
                                            Chief Judge
                                    United States District Court